1
2
3
4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 RISE BASKETBALL SKILL DEVELOPMENT, LLC,

Case No. 16-cv-04895-WHO

8 Plaintiff,

9 v.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

10 K MART CORPORATION, et al.,

11 Defendants.

12

13 **INTRODUCTION**

14 In this trademark case, plaintiff Rise Basketball Skill Development, LLC ("Rise

15 Basketball") alleges that defendants Kmart Corp., Sears Holdings Management Corp., and

16 Risewear, LLC (collectively "Risewear") infringe its "Winged Basketball Logo" with Risewear's

17 "Dunking Basketball Logo." Risewear moves for summary judgment, arguing that Rise

18 Basketball has failed to raise a material question of fact whether consumers could be confused by

19 the source of the relevant products. I agree with Risewear and GRANT defendants' motion.

20 **BACKGROUND**

21 **I.    RISE BASKETBALL**

22 Gus Abellar founded Rise Basketball in 2010. Abellar Decl. ¶ 1 (Dkt. No. 67-5). Rise

23 Basketball trains and develops basketball athletes and sells Rise Basketball-themed apparel. *Id.* ¶

24 2. It sells its apparel through an online retail store, at its facilities, and to athletes that sign up for

25 its programming. *Id.* ¶ 3. It has a stellar reputation and is broadly recognized in the insular

26 basketball training community. *Id.* ¶ 5.

27 Since 2010, Rise Basketball has used the "Winged Basketball Logo," shown below, to

28 market and advertise its basketball apparel. *Id.*¶ 3. It has sold and distributed apparel branded

United States District Court
Northern District of California

with the "Winged Basketball Logo" throughout the San Francisco Bay Area and Los Angeles Area.  It has also shipped merchandise across the country, including to Virginia, Texas, South Carolina, Nevada, New Mexico, Colorado, Wyoming, Washington, and Oregon.  Rise Basketball was issued a trademark for this design on June 30, 2015.  Request for Judicial Notice ("RJN"), Exh. H (Dkt. 66)[1].



## II.    RISEWEAR

Defendant Risewear is "a lifestyle athleisure brand that blurs the line between sportswear and every day wear."  Keetch Decl. ¶ 2 (Dkt. No. 64).  It owns a trademark, shown below, consisting of the stylized word "rise" with a jumping basketball player forming the letter "i" (the "Dunking Basketball Logo").  *Id.*



In early 2016, Risewear granted a license to non-party ACI International to use the "Dunking Basketball Logo" in connection with the manufacture and distribution of footwear.  *Id.* ¶ 3.  Risewear also entered into an agreement granting Sears the right to use the logo in connection

---

[1] I take judicial notice of Exhibit H, the Certificate of Registration of the Winged Basketball Mark on the Principal Register, Reg. No. 4,765,328.  This document is downloaded from the official online records of the United States Patent and Trademark Office and a proper subject of judicial notice under Federal Rule of Evidence 201.

with the advertising, marketing, and sale of footwear at Sears and Kmart stores. *Id.* ¶ 4. In July 2016, Kmart and Sears began to sell Risewear footwear both in store and on their respective websites. *Id.* ¶ 5. All marketing, packaging, and hangtags for Risewear footwear and other apparel and accessory items prominently feature the distinctive "Dunking Basketball Logo." *Id.* ¶ 7.

## III. PROCEDURAL BACKGROUND

Rise Basketball asserted claims for: (i) federal trademark infringement; (ii) common law trademark infringement; (iii) federal false designation of origin and unfair competition; (iv) violation of California statutory unfair competition; and (v) violation of common law unfair competition. Dkt. No. 7. Risewear moves for summary judgment. Dkt. No. 63. I heard argument on October 4, 2017.

## LEGAL STANDARD

## I. SUMMARY JUDGMENT

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See*

United States District Court
Northern District of California

*Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## II. TRADEMARK INFRINGEMENT

To prevail on a claim of trademark infringement under the Lanham Act, a party "must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). "[A] plaintiff trademark owner must establish a valid, protectable interest in order to proceed to the second prong of the trademark infringement analysis—the likelihood of confusion resulting from the defendant's alleged infringing use." *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 972 (9th Cir. 2007).

"[T]he standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). Federal registration of a trademark is prima facie evidence that the registrant is the owner of the mark. 15 U.S.C. § 1057(b). "Therefore, the registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration, and the challenger must overcome this presumption by a preponderance of the evidence." *Sengoku Works*, 96 F.3d at 1219. "However, the non-registrant can rebut this presumption by showing that the registrant had not established valid ownership rights in the mark at the time of registration—in other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated." *Id.* at 1220. "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

### DISCUSSION

Risewear argues that it is entitled to summary judgment because (1) Rise Basketball only has ownership rights over the "Winged Basketball Logo" and (2) no reasonable jury could conclude that "an appreciable number of people" would be confused when faced with the

"Dunking Basketball Logo" and the "Winged Basketball Logo." Mot. at 15.

## I.     RISE BASKETBALL TRADEMARKS

### A.     RISE BASKETBALL APPAREL Mark

Rise Basketball asserts that it holds federal registration for the RISE BASKETBALL APPAREL mark. Opp'n at 3 (Dkt. No. 67). Risewear argues that because the RISE BASKETBALL APPAREL mark is registered on the supplemental register rather than the principal register, Rise Basketball must present evidence that the mark has acquired a "secondary meaning." Mot. at 13-14. This is correct. A mark registered on the supplemental register is merely capable of being distinctive  and must acquire a secondary meaning to be a protectable mark. *See Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1454 (9th Cir. 1985). "To survive summary judgment [plaintiff] was required to come forward with enough evidence of secondary meaning to establish a genuine dispute of fact." *Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 873 (9th Cir. 2002). Rise Basketball does not put forth any evidence that the RISE BASKETBALL APPAREL mark has a "secondary meaning." No claim of infringement in this case can be based on the RISE BASKETBALL APPAREL mark.

### B.     ELEVATE YOUR GAME Mark

Risewear argues that Rise Basketball does not have standing to bring an infringement claim for the ELEVATE YOUR GAME mark because the owner of the trademark was Abellar. Mot. at 14. Rise Basketball notes that though Abellar obtained the registration, the registration has since been assigned to Rise Basketball. Opp'n at 4. Risewear insists that the assignment is not sufficient to solve the standing issue because standing must be based on the facts as they are at the time the lawsuit is filed. Reply at 3. It relies on *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, where the Federal Circuit overturned the denial of a motion to dismiss because the plaintiff could not establish that an assignment of registered trademarks had occurred prior to the filing of a lawsuit and therefore lacked standing. 93 F.3d 774, 780 (Fed. Cir. 1996).

I find this argument persuasive. In order to determine if Rise Basketball has standing to sue, I must consider the facts that existed when it filed this suit. *Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005) ("The party invoking the jurisdiction of the court cannot rely on events that

unfolded after the filing of the complaint to establish its standing."). It is clear that at the start of this action, Rise Basketball did not have an ownership interest in the ELEVATE YOUR GAME mark. It lacks standing to sue for infringement of that mark in this action.

### C. "Winged Basketball Logo"

Rise Basketball asserts that it holds federal registration for the "Winged Basketball Logo." Opp'n at 3. Risewear argues that the logo is not a word mark but instead a design mark. Reply at 3-4 (Dkt. No. 68). This is an important distinction. The ownership of a word mark entitles the owner exclusive rights in the word for the class of goods specified on the trademark. *See Pom Wonderful FFL v. Hubbard*, 7755 F.3d 1118, 1125 (9th Cir. 2014). In contrast, ownership of a design mark limits the owner's rights exclusively to the specific design trademarked.

The "Winged Basketball Logo" is a design mark, not a word mark. The certificate of registration describes the mark as consisting of "the stylized text 'rise' with a basketball in the center and wings on both sides. Below there is the stylized text 'Rise Basketball Apparel.'" RJN, Exh. H at 52. Rise Basketball later amended the mark to remove the "Rise Basketball Apparel." RJN, Exh. K at 67 (Dkt. 66).[2] The application for the "Winged Basketball Logo" also plainly indicates that the mark is not a standard character mark. RJN, Exh. G at 44 (Dkt. 66).[3] Accordingly, I analyze the logo as a design mark going forward.

## II. INFRINGEMENT

Rise Basketball's infringement claims all hinge on a showing of likelihood of confusion. *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 ("The test for false designation under the Lanham Act, as well as the common-law and statutory unfair competition claims, is whether there was a likelihood of confusion." (internal quotation omitted)); *see also Dreamwerks Production Grp.,*

---

[2] I take judicial notice of Exhibit K, the Amended Certificate of Registration of the Winged Basketball Mark on the Principal Register, Reg. No. 4,765,328. This document is downloaded from the official online records of the United States Patent and Trademark Office and a proper subject of judicial notice under Federal Rule of Evidence 201.

[3] I take judicial notice of Exhibit G The Trademark/Service Mark Statement of Use dated April 21, 2015 with respect to U.S. Application Serial No. 86/165,285. This document is downloaded from the official online records of the United States Patent and Trademark Office and a proper subject of judicial notice under Federal Rule of Evidence 201.

*Inc. v. SKG Studio*, 142 F.3d 1127, 1129 n. 2 (9th Cir. 1998). "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *Brookfield*, 174 F.3d at 1053. Because Rise Basketball has only demonstrated that it is a protectable ownership interest in the "Winged Basketball Logo," I consider only this mark in analyzing the likelihood of confusion.

To determine whether there is a likelihood of confusion, the Ninth Circuit applies the eight *Sleekcraft* factors: "similarity of the conflicting designations; relatedness or proximity of the two companies' products or services; strength of [the] mark; marketing channels used; degree of care likely to be exercised by purchasers in selecting goods; [the alleged infringer's] intent in selecting its mark; evidence of actual confusion; and likelihood of expansion in product lines." *Id.* at 1053-54; *see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).

Risewear argues that Rise Basketball has only alleged forward confusion in its complaint and cannot claim infringement through a theory of reverse confusion. Mot. at 13. Rise Basketball asserts that it does not need to specifically plead reverse confusion so long as it is a cognizable theory of infringement. Opp'n at 15. This assertion is correct. "[W]hen reverse confusion is compatible with the theory of infringement alleged in the complaint, a plaintiff need not specifically plead it." *Marketquest Group, Inc. v. BIC Corp.*, 862 F.3d 927, 932 (9th Cir. 2017). A theory of reverse confusion is plausible under the allegations in the complaint. This would be sufficient for the court to consider the possibility of reverse confusion in addition to forward confusion. *Id.* at 933.

However, there are no facts in dispute concerning reverse confusion, and no evidence to support such a claim here. "[R]everse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one." *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 630 (9th Cir. 2005). There is no evidence that consumers are likely to believe that Risewear was either the source or sponsor of Rise Basketball's goods, and no plausible to reason to think that such evidence exists in light of the analysis of forward confusion under the *Sleekcraft* factors.

"Forward confusion occurs when consumers believe that goods bearing the junior mark

came from, or were sponsored by, the senior mark holder." *Surfvivor Media*, 406 F.3d at 630. To avoid summary judgment on a forward confusion theory of infringement, Rise Basketball must raise a material question of fact whether consumers believed that Rise Basketball was either the source of, or were sponsoring, Risewear's product line. *Id.* The eight *Sleekcraft* factors confirm that there is no likelihood of confusion.

### 1. Similarity of the Marks

The similarity of the marks is a critical question in the analysis of consumer confusion. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). "[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion." *Id.* at 1206. The Ninth Circuit has developed factors for the similarity analysis: (1) "the marks must be considered in their entirety and as they appear in the marketplace;" (2) "similarity is adjudged in terms of appearance, sound, and meaning;" and (3) "similarities are weighed more heavily than differences." *Id.* at 1206 (citations omitted).

While the two marks are similar in terms of sound and meaning, since both marks use the word "rise" to evoke an action related to basketball, the marks are decidedly distinct in terms of appearance, as shown on page 2 of this Order. Each mark uses substantially different typefaces with starkly different surrounding designs. While Rise Basketball's "Winged Basketball Logo" surrounds a conventional presentation of the word "rise" with a large winged basketball reminiscent of the Bentley car logo, Risewear's mark substitutes the "i" with a man in the process of dunking a basketball. These differences clearly distinguish these two marks and greatly reduce the likelihood that consumers will conclude that they originate from the same source. This *Sleekcraft* factor weighs heavily in Risewear's favor.

### 2. Relatedness of Products

"Related goods are those which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Sleekcraft*, 599 F.2d at 348 n.10 (internal quotations omitted). "Related goods are generally more likely than unrelated good to confuse the public as the producers of the goods." *Brookfield*, 174 F.3d at 1055-56 (noting that if the parties did not compete to any extent whatsoever, the likelihood of confusion would probably be remote even

though the marks were virtually identical); *see also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d at 1291 ("Where goods are related or complementary, the danger of consumer confusion is heightened.").

To determine whether goods are related, courts may consider whether the goods are complementary, whether the products are sold to the same class of purchasers, and whether the goods are similar in use and function. *Sleekcraft*, 599 F.2d at 350; *see also id*. at 348 n.10 (noting that the touchstone is whether the good are related "in the mind of the consuming public as to the origin of the goods"). Risewear concedes that apparel and footwear are related. Mot. at 18. This *Sleekcraft* factor weighs in favor of Rise Basketball, but it bears scant weight in light of the analysis of the other factors.

### 3. Strength of the Mark

"The stronger a mark — meaning the more likely it is to be remembered and associated in the public mind with the mark's owner — the greater the protection it is accorded by the trademark laws." *Brookfield*, 174 F.3d at 1058. The Ninth Circuit uses a two-prong test to determine the strength of a particular mark, looking at the "conceptual strength" and the "commercial strength" of the mark. *GoTo.com*, 202 F.3d at 1207 ("'strength' of the trademark is evaluated in terms of its conceptual strength and commercial strength"). "Conceptual strength involves classification of a mark along a spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d at 1149 (internal quotations omitted). "The strength of a mark is determined by its placement on a continuum of marks from generic, afforded no protection; through descriptive or suggestive, given moderate protection; to arbitrary or fanciful awarded maximum protection." *E.&J. Gallo Winery*, 967 F.2d at 1291. "Commercial strength is based on actual marketplace recognition, and thus 'advertising expenditures can transform a suggestive mark into a strong mark.'" *Network Automation*, 638 F.3d at 1149 (internal quotations omitted).

Each party concedes that the "Winged Basketball Logo" is a suggestive mark. Mot. at 16; Reply at 9. A suggestive mark is inherently weak. *Am. Int'l Grp., Inc. v. Am. Int'l Bank*, 926 F.2d 829, 832 (9th Cir. 1991) (a suggestive or descriptive mark . . . is inherently a weak mark). A suggestive mark "may be strengthened by such factors as extensive advertising, length of exclusive

1    use, [or] public recognition." *Id.* Rise Basketball asserts that the "Winged Basketball Logo" has been

2    used for eight years with "admittedly modest" advertising, sales, and distribution. Reply at 10.

3    Advertisement efforts have included advertising on social media and Rise Basketball's website,

4    distribution of flyers locally, and a banner in its training facility. Klieger Decl., Ex 1 at 245:5-246:9

5    (Dkt. No. 65). In addition to those modest advertisement efforts, Rise Basketball brings in an

6    estimated $20,000 yearly revenue for the sale and distribution of its basketball apparel. Abellar Decl.

7    ¶ 10. Risewear's revenue through sales at Kmart and Sears, in comparison, dramatically exceeds

8    that amount. Townsend Decl., Exh E-1 at 51:8-9, 52:2-10 (Dkt. No. 67-18) (Keetch Depo.).

9    Taken together, Rise Basketball fails to demonstrate that plaintiff has strengthened its mark through

10   its commercial strength to overcome its conceptual weakness. This *Sleekcraft* factor weighs in favor

11   of Risewear.

### 4.    Marketing Channels

13       "Convergent marketing channels increase the likelihood of confusion." *Official Airline*

14   *Guides, Inc., v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993). Rise Basketball uses the internet as a

15   marketing channel, as does Risewear, but that channel is virtually universal and does not shed much

16   light on the likelihood of consumer confusion. *See Network Automation*, 638 F.3d at 1151 ("Today, it

17   would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous

18   marketing channel does not shed much light on the likelihood of consumer confusion.").

19       The evidence demonstrates that the parties sell their products mostly through different

20   channels. Sears and Kmart are the only sellers of Risewear footwear. Keetch Decl. ¶ 5 (Dkt. No. 64).

21   Rise Basketball sells its goods on its website and through its basketball training programs. Exh. 1 at

22   178:6-22. Risewear argues that there is no overlap in the marketing channels. Mot. at 18. Rise

23   Basketball counters that because each party sells its goods online and on a retail level, the market

24   channels are "highly similar." Reply at 13.

25       The products are not sold in the same stores, online or offline. That these products are both

26   sold online does not nearly enough to make the market channels highly similar. *Playboy Enters., Inc.*

27   *v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004). Rise Basketball does not present

28   any evidence that the marketing channels overlap except for the general assertion that each party sells

online and at a retail level.  It does not establish convergent marketing channels.  The evidence establishes that the parties use divergent marketing channels.  This *Sleekcraft* factor weighs in Risewear's favor.

### 5. Degree of Care Consumers Use in Selecting Product

"In assessing the likelihood of confusion to the public, the standard used by the court is the typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353.  "When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely." *Id*.  "[W]hen the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." *Id*.

Focusing on forward confusion, Risewear's products – athletic shoes – are the relevant products.  Risewear argues that athletic shoes are not impulse buys, and customers tend to exercise a degree of care in making such purchases.  Mot. at 19.  Rise Basketball counters that sports clothing are impulse buys much like other inexpensive consumer items.  Reply at 13.  This divergent view on the degree of care purchasers of athletic shoes also exists in the law.  *Compare L.A. Gear. Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1134 (Fed. Cir. 1993) ("We think the district court was mistaken in viewing [athletic shoe] consumers as unsophisticated and casual."), *with* K–Swiss, Inc. v. USA Aisiqi Shoes, Inc., 291 F.Supp.2d 1116, 1125 (C.D.Cal.2003) ("A reasonable [athletic shoe] consumer [] is unlikely to exercise a high degree of care in selecting shoes.").

The evidence does not conclusively determine which view is correct.  But even in instances of little degree of care, "purchasers tend to use such ordinary caution as is reasonable." *Lindy Pen Co., Inc. v. Bic Pen Corp.,* 725 F.2d 1240, 1246 (9th Cir. 1984).  The stark differences in the "Winged Basketball Logo" and the "Dunking Basketball Logo" is evident.  A consumer using any degree of care would be able to differentiate the brands.  Consequently, this *Sleekcraft* factor is also resolved in favor of Risewear.

### 6. Intent

"When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." *Official Airline Guides*, 6 F.3d at 1394.  Here, there is no evidence

that Risewear knew of Rise Basketball's "Winged Basketball Logo." But there is evidence that the Risewear was aware of Rise Basketball as an organization and of their RISE BASKETBALL APPAREL mark. RJN, Exh. B at 2 (Dkt. No. 67-30). Risewear's initial trademark request was denied because of possible confusion with the mark. *Id.* Rise Basketball argues that the knowledge gained by the rejection coupled with a trademark search conducted by defendants' attorneys are sufficient to infer intent to adopt a similar mark. Reply at 14.

Risewear may have known about the mark, although it is not clear that it did, but two marks at issue are so dissimilar that whether Risewear was aware of Rise Basketball's mark is irrelevant; it did not adopt a similar mark no matter its intent. This factor is neutral.

### 7. Actual Confusion

Evidence of actual confusion by consumers is strong evidence of likelihood of confusion." *Surfvivor Media,* 406 F.3d at 633. "The focus is confusion with respect to the source of a product or service." *Rearden LLC v. Rearden Commerce, Inc.,* 597 F. Supp. 2d 1006, 1023 (N.D. Cal. 2009); *see also Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1151 (9th Cir. 2002) ("To constitute trademark infringement, use of a mark must be likely to confuse an appreciable number of people as to the source of a product."). The absence of evidence of actual confusion may not be determinative due to the difficulty of proving actual confusion. *Brookfield,* 174 F.3d at 1050.

Risewear argues that Rise Basketball has presented evidence of just a single instance of actual confusion. Mot. at 18; *see* Huggins Decl. ¶ 3-5 (Dkt. No. 67-9). In addition, Abellar described several other instances of people who were confused during his deposition. *See, e.g.,* Klieger Decl., Exh. 1 at 28:15-21, 31:18-32:1, 35:9-37:16 (Dkt. No. 65). But each confused person identified was either a client of Rise Basketball, a family member of Abellar, or a friend of Abellar. *Id.* That is not sufficient evidence of actual confusion given the close relationship between Rise Basketball and the confused individuals. Mot. at 19. "Trademark law is skeptical of the ability of an associate of a trademark holder to transcend personal biases to give an impartial account of the value of the holder's mark. Attestations from person in close association and intimate contact with (the trademark claimant's) business do not reflect the views of the purchasing public." *Self-Realization Fellowship Church v. Ananda Church of Self-Realization,* 59 F.3d 902, 910 (9th Cir. 1995) (internal quotations omitted). If

the confusion of people "in close association and intimate contact" with Rise Basketball are excluded, there is no remaining evidence of actual confusion. Because the absence of proof on this factor is normally given relatively little weight, this factor does not weigh heavily in favor of either side.

### 8.    Likelihood of Expansion

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354 (internal quotations omitted). Risewear argues that because Rise Basketball does not articulate a plan to expand business, this factor weighs in its favor. Mot. at 20. Rise Basketball does not address this point in its reply. Nothing in the evidence suggests plans for expansion. This *Sleekcraft* factor weighs in favor of Risewear.

### 9.    Overview of *Sleekcraft* Factors Analysis

An overall evaluation of the *Sleekcraft* factors demonstrates that a fact finder could not find a likelihood of confusion. The dissimilarity of the marks is striking. Rise Basketball's mark is conceptually and commercially weak . The companies use different marketing channels and there is scant, at best, evidence of confusion.

I recognize that the Ninth Circuit has cautioned that district courts should sparingly grant summary judgment in trademark cases because they are so fact-intensive. *See Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001) ("[T]rial courts disfavor deciding trademark cases in summary judgments because the ultimate issue is so inherently factual."). Granting summary judgment is only appropriate "in cases where the evidence is clear and tilts heavily in favor" of one party. *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1075 (9th Cir. 2006). For the reasons described in this Order, I conclude that summary judgment is appropriate in this case.

Rise Basketball did not create a material question of fact that there is consumer confusion under a forward confusion theory or a reverse confusion theory. I GRANT Risewear's motion for summary judgment.

### III.    ADMINISTRATIVE MOTION TO SEAL

Rise Basketball has filed a number of documents under seal in conjunction with the Risewear's motion for summary judgment. *See* Dkt. No. 67. Risewear designated the information that Rise Basketball filed under seal as confidential pursuant to the protective order. *See* Dkt. No. 45. Per Local Rule 79-5(e), as designating party, Risewear was obligated file a declaration establishing that all of the designated material is sealable within four days of the filing of the administrative motion to seal. It has failed to do so.

I ORDER that Risewear file the appropriate declaration by November 6, 2017, establishing a compelling justification for sealing the documents. If it fails to do so, the administrative motion to seal will be DENIED.

### CONCLUSION

For the reasons outlined above, Risewear's motion for summary judgment is GRANTED as to all claims. Risewear shall file a declaration establishing a compelling justification for sealing the documents deemed confidential by November 6, 2017. Absent such declaration, Rise Basketball's motion to seal is DENIED.

**IT IS SO ORDERED.**

Dated: October 27, 2017

William H. Orrick
United States District Judge